**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| LUIS GONZALEZ and SONIA GONZALEZ,<br><br>Plaintiffs,<br><br>v.<br><br>OCWEN HOME LOAN SERVICING, SAND CANYON CORPORATION, DALE M. SUGIMOTO, FABIOLA N. CAMPERI, MATTHEW A. ENGEL, WILLIAM S. SMITH, LEOPOLD & ASSOCIATES, OPTION ONE MORTGAGE CORPORATION, AMERICAN HOME MORTGAGE SERVICE, INC., DEUTSCHE BANK NATIONAL TRUST COMPANY, SOUNDVIEW HOME LOAN TRUST 2005-OPT3, HUNT LEIBERT JACOBSON PC, BENJAMIN T. STASKIEWICZ, S. BRUCE FAIR, ESQ., JON DOE, JAN DOE, HINSHAW & CULBERTSON, LLP, VALERIE NICOLE DOBLE,<br><br>Defendants. | Civil Action No.<br>3:14 - CV - 53 (CSH)<br><br><br><br>FEBRUARY 25, 2015 |

**ORDER OF DISMISSAL**

**HAIGHT, Senior District Judge**:

## I. INTRODUCTION

On January 16, 2014, *pro se* Plaintiffs Luis Gonzalez and Sonia Gonzalez commenced this action against various defendant mortgage companies, banks, and individuals (counsel to and executives for said mortgage companies and banks), alleging violations of the United States

Constitution and the United Nations Declaration on the Rights of Indigenous Peoples ("UNDRIP"), "banking fraud," and conspiracy with respect to the foreclosed mortgage of 54 Abbe Road, East Windsor, Connecticut (the "East Windsor Property").[1]   Doc. 1.  This is the latest of three federal actions Plaintiffs have filed requesting redress from a Connecticut state court's order of foreclosure on the  East Windsor Property. Two such prior federal actions were dismissed by this Court.  *See, e.g., Gonzalez v. Capital One Mortgage Corp.*, No. 3:12-cv-01470 (CSH) (dismissed for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted); *Gonzalez v. United States*, 3:13-cv-650 (CSH) ( dismissed for lack of proper service, failure to prosecute, failure to state a claim upon which relief may be granted, and in light of the bar of the Rooker-Feldman doctrine).

In the case at bar, upon analysis of the pertinent complaint and the court record in this case, the Court finds that the operative complaint –the Amended Complaint [Doc. 9] – is properly subject to dismissal on numerous grounds.   First, this Court lacks subject matter jurisdiction in that there is neither a colorable claim arising under the Constitution or federal statute, *i.e.,* no  "federal question," 28 U.S.C. § 1331, nor diversity of citizenship, 28 U.S.C. § 1332(a).

Furthermore, were the Court to find that either basis for subject matter jurisdiction existed, the action is still barred by the Rooker-Feldman doctrine.  That doctrine  "directs federal courts to abstain from considering claims when . . .  (1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit

---

[1]  Also among the named Defendants, Plaintiffs include the generic, un-named "Jon Doe" and "Jan Doe."  It is unclear whom Plaintiffs seek to represent with these designations.

commenced." *McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir.2010).   In the present case, Plaintiffs' allegations are inextricably intertwined with  prior state court judgments, such that their  federal claim would succeed only if the state court wrongly decided the issues.  Under these circumstances, the Rooker-Feldman doctrine bars the action. In short, this Court lacks subject matter jurisdiction to resolve Plaintiffs'  requests for relief and must dismiss the action.

Second, alternative bases for dismissal warrant dismissal of this action.   Specifically, Plaintiffs have failed to state a claim upon which relief may be granted, Fed. R. Civ. P. 12(b)(6), and have failed to serve and/or prosecute their action for more than six months, each of which constitutes grounds for involuntary dismissal.  *See* Fed. R. Civ. P. 4(m); Fed. R. Civ. P. 41 (b); and D. Conn. L. Civ. R. 41(a).

## II.  BACKGROUND

As this Court previously  recounted in *Gonzalez v. Option One Mortgage Corporation*, No. 3:12 - CV - 1470 (CSH), on July 29, 2005, Plaintiff Luis Gonzalez signed a note (the "Note") promising to pay the lender, Option One Mortgage Corporation ("Option One"), $258,750.000. Plaintiffs executed a Mortgage in favor of Option One, relating to the East Windsor Property, to secure the Note.[2]  Plaintiffs subsequently  defaulted on this Mortgage Loan.   As a result, Deutsche Bank National Trust Company ("Deutsche Bank"), as trustee and holder of the Note, accelerated the balance due.[3]

---

[2]   The Court will address the Note and the Mortgage collectively as the "Mortgage Loan" in this Ruling.

[3]   Deutsche Bank has clarified for the Court that Defendant "Ocwen Loan Servicing LLC is the current servicer" of the Mortgage Loan; and the "prior servicer was Homeward Residential, Inc., f/k/a American Home Mortgage Servicing, Inc."  Doc. 8, p. 3.

On May 19, 2010,  Deutsche Bank, by and through its counsel, Hunt Leibert Jacobsen, PC, initiated a foreclosure action against Plaintiffs in Connecticut Superior Court, Judicial District of Hartford at Hartford, *Deutsche Bank National Trust Co. v. Gonzalez*, No. HHD-CV-07-6001411-S. Deutsche Bank obtained a  judgment of strict foreclosure in that action on July 28, 2011.[4] *See Gonzalez v. Option One Mortgage Corp.*, No. 3:12 - CV - 1470 (CSH), Doc. 23, Ex. A.   The final law day was set for September 26, 2011 [Doc. 8, Ex. D ("Foreclosure Docket and August 8, 2011 Order")]. On September 29, 2011, title to the Property became conclusively vested in Deutsche Bank as Trustee, and all of Plaintiffs' interest was extinguished.[5] A Certificate of Foreclosure was recorded

---

[4]   Deutsche Bank had previously obtained a judgment of strict foreclosure in Connecticut Superior Court on June 12, 2008 (Case No. HHD-CV-07-6001411S), but then withdrew the action in an attempt to settle the case with Plaintiffs. *See Gonzalez v. Option One Mortgage Corp.*, 3:12-cv-1470 (CSH), Doc. 4-2 (Strict Foreclosure, dated 6/12/2008) & Doc. 4-3 (withdrawal of action by Deutsche Bank, dated 7/9/2009).   In May of 2010, Deutsche Bank reinitiated the action in Connecticut Superior Court (Case No. HHD-CV10-6011071-S) and obtained a judgment of strict foreclosure.

[5]   Defendant Deutsche Bank informed the Court of the following facts regarding ejectment of Plaintiffs from the East Windsor property after the title to said property vested in Deutsche Bank:

Plaintiffs failed and/or refused to leave the Property. As such, the foreclosure court originally issued an Execution of Ejectment on October 31, 2011. Ex. D, Foreclosure Docket, Entry No. 135.00. Initially, ejectment was voluntarily postponed until judgment was entered in favor of Deutsche Bank as Trustee in a separate civil lawsuit filed by Plaintiffs in state court in an effort to avoid and/or delay ejectment from the Property (the "State Court Case"). . . .

On December 12, 2013, the foreclosure court issued a second Execution of Ejectment. *See* Ex. D, Foreclosure Docket and Application and Execution for Ejectment Foreclosure. After receiving the Execution of Ejectment from the foreclosure court, Deutsche Bank as Trustee's counsel requested that a state marshal schedule and complete ejectment. The state marshal scheduled ejectment for January 23, 2014. Plaintiffs received notice of the January 23, 2014 ejectment on or before January 12, 2014. *See* Plaintiffs' Motion, dated January 12, 2014 (referencing the Execution of Ejectment and January 23, 2014 ejectment date).

on November 23, 2011.  *See* Doc. 8, Ex. E ("Certificate of Foreclosure").

Plaintiffs thereafter commenced an action in state court, seeking to avoid foreclosure, regarding the Mortgage Loan on the East Windsor Property against Option One, American Home Mortgage Servicing, Inc. ("American Home Mortgage"), Deutsche Bank, the Hunt Leibert Jacobson law firm, and two individual attorneys in that firm,  Benjamin Staskiewicz, and S. Bruce Fair.[6]  *See Gonzalez v. Option One Mortgage Corp.*, No. HHD-CV-11-5035882-S.  In that action, alleging fraud and mistreatment with respect to the Mortgage Loan, Defendants Hunt Leibert Jacobson, PC, and Attorneys Benjamin Staskiewicz and S. Bruce Fair (collectively the "Hunt Leibert Defendants"), filed motions to strike and for judgment.  *See id.*, Doc. 4-5 (docket sheet of state action).  On March 5, 2012, the state court granted the motion to strike [Doc. 105.86] ; and on August 9, 2012, that court granted the motion for judgment in favor of the Hunt Leibert Defendants [Doc. 107.86]. Option One thereafter filed a motion to dismiss [Doc. 144], which was granted on September 10, 2013; and judgment of dismissal as to Option One entered on that date  [Doc. 144.87].  The state court ultimately entered a general "Judgment Without Trial" for defendants [Doc. 154.87, dated 9/10/2013].

Plaintiffs thereafter filed three actions in federal court, including the one at bar.  In the first

---

Despite timely notice of the issuance of the Execution of Ejectment and that ejectment was scheduled for January 23, 2014, Plaintiff Sonia Gonzalez filed for bankruptcy. Plaintiffs also filed a second federal lawsuit and duplicate Motions to Stay in both of the federal lawsuits, as well as in the Foreclosure Action.

Doc. 8 ("Opposition to Plaintiff's Motion For Stay/Restraining Order/Injunctions from Ejectment"), p. 4.

[6]  Plaintiffs have also included Staskiewicz and Fair as individual defendants in this action.

action, *Gonzalez v. Capital One Mortgage Corp.*, No. 3:12-cv-01470 (CSH), 2014 WL 2475893 (D.Conn. June 3, 2014), this Court granted Defendants' motions to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), Fed. R. Civ. P., in that there was no diversity of citizenship between Plaintiffs and Defendants and no federal question arising under the Complaint. *See* 28 U.S.C. §§ 1332(a), 1331, respectively. In particular, the Court found that Plaintiffs and at least three of the Defendants were citizens of Connecticut. Furthermore, despite Plaintiffs' references to several federal statutes, they had failed to set forth any relevant facts giving rise to either a federal statutory or constitutional claim. Therefore, the Court lacked a basis upon which to exercise federal jurisdiction.

The Court also explained that even if there had been "diversity of citizenship" or "federal question" grounds to exercise subject matter jurisdiction, the action would still be subject to dismissal in that it was barred by the Rooker-Feldman doctrine (in light of Plaintiffs' previous losses in state court on the same facts and issues presented in federal court) and failed to set forth any valid claim upon which relief could be granted, Fed. R. Civ. P. 12(b)(6)

Thereafter, in *Gonzalez v. United States*, No. 3:13-cv-650 (CSH), 2014 WL 3738179 (D.Conn. July 29, 2014), this Court once again dismissed Plaintiffs' claims, this time in light of (1) Plaintiffs' failure to serve the summons and Complaint upon the Defendant United States and (2) Plaintiff's failure to prosecute the action since its inception. The Court explained that even if it were to allow Plaintiffs, as *pro se* litigants, additional time to cure those defects, their "Tort Claims Complaint" was "not only vague and incomprehensible in its language," but also "based on a patently meritless legal theory and wholly 'frivolous,' as that term is used with respect to legally impossible claims." 2014 WL 3738179, at *7. Moreover, Plaintiffs' attempt to set forth a claim

6

under the Federal Torts Claim Act ("FTCA"), 28 U.S.C. § 1346(b),  was also not possible at law under the particular circumstances of the case. *Id*.  Lastly, Plaintiffs' claims "with respect to their East Windsor property, asserting claims regarding foreclosed property for which they received unfavorable rulings in state court and which were previously dismissed in federal court," were also "barred by the Rooker-Feldman doctrine." *Id.*

In the case at bar, the *third* federal action Plaintiffs have filed in response to the Connecticut state court foreclosure on the East Windsor property, the Court finds that the Amended Complaint is properly subject to dismissal on the same grounds that led to dismissal of their prior actions before this Court.[7]  Namely, Plaintiffs have failed to establish subject matter jurisdiction, and have, in fact, filed this action in violation of the Rooker-Feldman doctrine.  Moreover,  Plaintiffs have: (1) failed to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6);  (2)  failed to make proper service of the complaint and summons upon the Defendants, Fed. R. Civ. P. 4(m); and  (3) failed to prosecute their action,  Fed. R. Civ. P. 41 (b); D. Conn. L. Civ. R. 41(a).

### III. <u>DISCUSSION</u>

**A.**    <u>**Lack of Subject Matter Jurisdiction**</u>

**1.**        <u>**No Federal Question or Diversity of Citizenship**</u>

First and foremost, the Court must examine whether it has subject matter jurisdiction in this action.  A federal court is obligated to inquire into subject matter jurisdiction *sua sponte* at the earliest opportunity to determine whether such jurisdiction exists.  *See, e.g., Transatlantic Marine*

---

[7]    As counsel for Deutsche Bank previously noted, "Deutsche Bank as Trustee is entitled to take possession of the [East Windsor] Property in accordance with Connecticut Law and the Execution of Ejectment issued and/or to be issued by the Connecticut Superior Court, Judicial District of Hartford at Hartford, in Case No. HHD-CV10-6011071-S."  Doc. 8, p. 2.

*Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 107-08 (2d Cir. 1997); *Licari v. Nutmeg Ins. Adjusters, Inc.*, No. 3:08mc245(WIG), 2008 WL 3891734, at * 1 (D. Conn. July 31, 2008). Then if subject matter jurisdiction is lacking, the action must be dismissed. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

In the case at bar, the Court finds no valid basis for subject matter jurisdiction. Plaintiffs explicitly state that "[j]urisdiction is pursuant to a POPE[']S DECREE," namely an "Apostolic Letter" by Pope Francis dated July 11, 2013, "On the Jurisdiction of Judicial Authorities of Vatican City State in Criminal Matters." Doc. 9 ("Amended Complaint," History), ¶ 4; Doc. 12 (caption of "Apostolic Letter issued *Motu Proprio* of the Supreme Pontiff Francis").

The Court recognizes that Plaintiffs are entitled to their belief in "higher powers" than those exercised by a federal court. Moreover, the Pope, as the head of the Catholic Church, is entitled to make papal law *a motu proprio*, "on his own impulse" as that Latin phrase may be translated. Nonetheless, in the United States, there is a fundamental separation of church and state pursuant to the "Establishment Clause" and "Free Exercise Clause" of the First Amendment of the Constitution. *See* U.S. Const. amend. I. A federal court may not exercise subject matter jurisdiction based on a papal decree.

A federal court exercises limited jurisdiction pursuant to Article III of the Constitution. It may exert subject matter jurisdiction over claims in which: (1) there is a "federal question" in that a colorable claim arises under the "Constitution, laws or treaties of the United States," 28 U.S.C. § 1331; and/or if (2) there is complete "diversity of citizenship" between each plaintiff and all

8

defendants and a minimum of $75,000 in controversy,  28 U.S.C. § 1332.[8]  *See, e.g., Da Silva v. Kinsho International Corp.*, 229 F.3d 358, 363 (2d Cir. 2000) (delineating two categories of subject matter jurisdiction).  Absent jurisdiction under one of these two prongs, a case must be dismissed. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

In the present case, Plaintiffs appear to allege, in vague terms, the presence of constitutional issues.  *See, e.g.*, Doc. 9 (introduction), ¶¶ 6-7, 9, 11 (referencing "[c]onstitutionality," "No law shall ever be passed to curtail or restrain the liberty of speech or of the press," "due process" and "[t]he people shall be secure in their persons, houses, papers[,] possessions from unreasonable searches or seizures").  None of these statements, however, include sufficient facts to state  a constitutional claim. [9]

Absent a "federal question" – a federal statutory or constitutional claim, the Court examines whether there is "diversity of citizenship" subject matter jurisdiction, 28 U.S.C. § 1332(a)(1).  It is clear that Plaintiffs have failed to allege sufficient grounds for "diversity of citizenship." In order for there to be diversity of citizenship, there must be "complete diversity,"  *i.e.*,  all plaintiffs must be

---

[8]   The Court  also  notes that a federal court may exercise subject matter jurisdiction over a claim brought against the federal government, but the federal government is not a party to this action.  *See* 28 U.S.C. § 1346.

[9]   Plaintiffs also  assert  that Defendants have violated provisions of UNDRIP as grounds for arguing that this case has a "constitutional question." Doc. 9 (introduction), ¶¶ 2.1, 2.4-.5. Plaintiffs, however, erroneously equate a Declaration of the United Nations with the United States Constitution to allege constitutional violations. Unlike the Constitution, "UN Declarations are generally not legally binding," but rather "represent the dynamic development of international legal norms and reflect the commitment of states to move in  certain  directions, abiding by certain principles."  *See*  http://www.un.org/esa/socdev/unpfii/documents/faq_drips_en.pdf.

9

citizens of states diverse from those of all defendants." *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 118 (2d Cir. 2014) (citing *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005)). Thus, "[d]iversity is not complete if any plaintiff is a citizen of the same state as any defendant." *St. Paul Fire and Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 80 (2d Cir. 2005) (citing *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 373-74 (1978)). In addition, "[i]n an action in which jurisdiction is premised on diversity of citizenship, diversity must exist at the time the action is commenced." *Universal Licensing Corp. v. Lungo*, 293 F.3d 579, 581 (2d Cir. 2002).

At the commencement of this action, in the original Complaint, and again later in the Amended Complaint, Plaintiffs declare that they are "domicile[d] at Connecticut Republic . . . at East Windsor[,] 54 Abbe Road." Doc. 1, ¶ 1; Doc. 9 ("History"), ¶ 1. As such, they are citizens of Connecticut. *See, e.g., Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (an individual's citizenship for diversity purposes is determined by his or her domicile); *Linardos v. Fortuna,* 157 F.3d 945*,* 948 (2d Cir. 1998) ("For purposes of diversity jurisdiction, a party's citizenship depends on his domicile.").

With respect to Defendants, Plaintiffs allege that Deutsche Bank is a "[c]itizen of the US federal enclave" and "non[-]native or foreign" business, Doc. 9 ("History"), ¶ 2, and that Option One is a "foreign" business and "of divers [sic] citizenship," *id.*, ¶ 14. Moreover, Plaintiffs allege that Sand Canyon Corporation has a principal place of business located in Irvine, California. *Id.*, ¶ 21. Absent a full list of their states of incorporation and principal places of business, the Court cannot determine the citizenship of these corporate entities. *See* 28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where

it has its principal place of business").  In any event, even if Plaintiffs were able to provide sufficient facts to establish diversity with these corporate entities, diversity would  be destroyed by the citizenship of other Defendants in the case, including individuals and entities who are citizens of Connecticut.

In the *Option One Mortgage* case, No. 3:12-cv-1470 (CSH), "Defendants represent[ed] that Plaintiffs and Defendants Hunt Leibert Jacobson, P.C., Benjamin T. Staskiewicz, and S. Bruce Fair are, and most importantly were at the commencement of the action, citizens of Connecticut." 2014 WL 247589, at *6.  Hunt Leibert Jacobson, Staskiewicz, and Fair are also Defendants in this action. Furthermore, Plaintiffs list Connecticut addresses for Defendants Glauss & Braus and Leopold & Associates. Doc. 9, p. 15.  Under these circumstances, Plaintiff and three or more Defendants in this action are citizens of Connecticut, which destroys diversity.[10]

Finally,  Plaintiffs fail to allege and/or establish that the amount in controversy meets or exceeds the jurisdictional minimum of $75,000.  They make no mention of any dollar amount with respect to damages.  Thus, the Court concludes that subject matter jurisdiction has not been demonstrated.

---

[10]  As  discussed above,  Hunt  Leibert Jacobsen and individuals Staskiewicz and Fair are Connecticut citizens.  Moreover, if Glauss & Braus and Leopold & Associates are corporations, incorporated in Connecticut and/or  with their principal places of business located in Connecticut, or limited liability companies, comprised of members who are citizens of Connecticut, they are also citizens of  Connecticut and thus non-diverse from Plaintiffs in their citizenship.  *See*  28 U.S.C. § 1332(c)(1) (defining citizenship of corporation for diversity purposes);  *Bayerische Landesbank, New York Branch v. Aladdin Capital Management*, 692 F.3d 42, 49 (2d Cir. 2012) ("a limited liability company takes the citizenship of each of its members").

As to other Defendants in this action, Plaintiffs fail to address their  citizenship altogether. Any one of these Defendants could be citizens of Connecticut as well.  In any event, as long as one Defendant in this action is a citizen of the same state as the Plaintiffs (*i.e.*, Connecticut), there is no complete diversity.

However, even if Plaintiffs were able to properly establish "federal question" or "diversity of citizenship" jurisdiction, as set forth below, this action must be dismissed on other grounds.[11]

### 2.   **Rooker-Feldman Doctrine**

Even if Plaintiffs were able to assert a federal claim or establish diversity of citizenship, the Court would still lack subject matter jurisdiction over this matter pursuant to the Rooker-Feldman doctrine.  "The Rooker–Feldman doctrine provides that, in most circumstances, the lower federal courts do not have subject matter jurisdiction to review final judgments of state courts." *Grim v. Baker*, 553 F. App'x 84, 85 (2d Cir. 2014) (citing *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482–83 (1983) (holding that "a United States District Court has no authority to review final judgments of a state court in judicial proceedings"); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414–16 (1923) ("no court of the United States other than [the Supreme Court] could entertain a proceeding to reverse or modify [a state court's] judgment for errors")). "The Supreme Court has clarified that the doctrine is confined to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Grim*, 553 F. App'x at 85 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (internal quotation marks omitted).

As the Second Circuit has articulated, "Rooker–Feldman directs federal courts to abstain from considering claims when four requirements are met: (1) the plaintiff lost in state court, (2) the

---

[11]  Normally, the Court would require evidence from the parties to substantiate their states of citizenship for diversity purposes and then make a determination as to whether subject matter jurisdiction exists.  In light of the numerous grounds for dismissal, the Court will avoid making the parties expend resources in a futile effort.

plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir.2010). *Accord Remy v. New York State Dep't of Taxation and Finance*, 507 F. App'x 16, 18 (2d Cir. 2013). Moreover, "the applicability of the Rooker–Feldman doctrine turns not on the similarity between a party's state-court and federal-court claims . . . but rather on the causal relationship between the state-court judgment and the injury of which the party complains in federal court." *McKithen v. Brown*, 481 F.3d 89, 97-98 (2d Cir. 2007), *cert. denied*, 552 U.S. 1179 (2008).

"Even where a plaintiff alleges that a state court judgment was procured by fraud, Rooker–Feldman will divest the federal court of jurisdiction." *Astoria Federal Sav. & Loan Ass'n v. Arcamone,* No. 3:12-cv-230 (WWE), 2012 WL 4355550, at *2 (D.Conn. Sept. 18, 2012) (citing *Done v. Wells Fargo Bank, N.A.*, No. 08–CV–3040 (JFB)(ETB), 2009 WL 2959619, at *3 n.6 (E.D.N.Y. Sept. 14, 2009)). *See also Smith v. Wayne Weinberger P.C.,* 994 F.Supp. 418, 423 (E.D.N.Y.1998) ("The fact that the plaintiff alleges that the State Court judgment was procured by fraud does not remove his claims from the ambit of Rooker-Feldman.").

In the particular context of state court judgments of foreclosure, "Courts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the Rooker-Feldman doctrine." *Gunn v. Ambac Assur. Corp.*, No. 11 Civ. 5497(PAC)(JLC), 2012 WL 2401649, at *12 (S.D.N.Y. June 26, 2012) (collecting cases), *report and recommendation adopted*, 2012 WL 3188849 (S.D.N.Y. Aug. 6, 2012). *See also Swiatkowski v. Bank of America, NT & SA*, 103 F. App'x 431, 432 (2d Cir. 2004) (affirming district court's "holding that under the Rooker-Feldman doctrine, the [district] court lacked subject matter jurisdiction: even reading the complaint

13

liberally, . . . [plaintiffs'] lawsuit was effectively seeking to re-litigate a judgment of foreclosure entered against them by the state court"); *Billie v. Aurigremma*, No. 3:13-cv-1432 (JBA), 2013 WL 6331358, at *2 (D.Conn. Dec. 5, 2013) ("any claims contesting the validity of the state court foreclosure judgment are precluded by the Rooker-Feldman doctrine"); *Aluria v. Jurgelas*,  No. 3:12-cv-1443 (WWE), 2013 WL 2286051, at *1 (D.Conn. May 23, 2013) ("Plaintiff's action invites this court to review and reject the judgment rendered in the foreclosure action prior to plaintiff's commencement of this action;" and  "[t]hus, plaintiff['] s challenge to a judgment of foreclosure issued by the state superior court satisfies the Rooker–Feldman factors, and the Court lacks subject matter jurisdiction to  resolve plaintiff's request for relief."); *Astoria Federal Sav. & Loan Ass'n*, 2012 WL 4355550, at *2  (where plaintiff sought "an injunction to prevent the subject property from being 'stolen' from him" and "an order to void the [state court's] foreclosure orders," his "challenge to a judgment of foreclosure issued by the state superior court satisfie[d] the Rooker-Feldman factors, and the Court lack[ed] subject matter jurisdiction to resolve plaintiff's request for relief"); *Vossbrink v. Accredited Home Lenders, Inc.*, No. 3:11-cv-1312 (WWE), 2012 WL 2952374, at * 1 (D.Conn. July 19, 2012) ("Here, plaintiff's motion for issuance of a temporary restraining order or preliminary injunction challenges a judgment of foreclosure issued by the state superior court;" "[t]hus, the Rooker-Feldman factors apply and the Court lacks subject matter jurisdiction to resolve plaintiff's request for relief."); *Smith v. Wayne Weinberger P.C.,* 994 F.Supp. 418, 423 (E.D.N.Y.1998) (in action where plaintiff alleged that state court default judgment in a foreclosure proceeding was procured by fraud, court dismissed the plaintiff's action as "in contravention of Rooker–Feldman" because  the conversion claims were "merely a thinly-veiled effort to invalidate the State Court's foreclosure judgment").

14

In the present action, all four Rooker-Feldman factors are present.  First, the Plaintiffs clearly lost in state court.  Plaintiffs initially lost when attempting to defend against foreclosure in the Connecticut state action of *Deutsche Bank National Trust Co. v. Gonzalez*, HHD-CV10-6011071-S (Conn. Super. Ct. 2010).  *See Option One Mortgage*, No. 3:12–CV–1470 (CSH), Doc. 17-1, p. 2-5 (docket sheet reflecting, *inter alia*,  "Judgment of Strict Foreclosure" with respect to Plaintiffs' East Windsor Property, 7/18/2011; and "Execution of Ejectment Issued," 10/31/2011).

Plaintiffs lost for a second time when they sued in Connecticut Superior Court, Judicial District of Hartford, to obtain relief from their mortgage obligations and to avoid foreclosure on the East Windsor Property.  *See Gonzalez v. Option One Mortgage*, HHD-CV11-5035882-S (Conn. Super. Ct. 2011).[12]  In that second action, upon motion by the Hunt Leibert Defendants, the state court struck Plaintiffs' complaint in its entirety and entered judgment in Defendants' favor on August 9, 2012.  *See* docket sheet of state court action, reflecting, *inter alia*, Order [Doc. 107.86] entering "Judgment pursuant to Practice Book § 10-44 disposing of this matter . . . in favor of Defendants, Hunt Leibert Jacobson, PC; Benjamin T. Staskiewicz, Esq.; and S. Bruce Fair, Esq.," dated 8/9/2012).   The court subsequently entered a general judgment without trial in favor of the remaining defendants on September 10, 2013.[13]

Second, in the case at bar, the Plaintiffs once again complain of the injuries caused by the

---

[12] *See also Gonzalez v. Option One Mortgage Corp.*, No. 3:12–CV–1470 (CSH), Doc. 17-1, p. 13-16.

[13]  The defendants in  the state court action included many of the Defendants in the case at bar:  Option One Mortgage Corporation; American Home Mortgage Servicing, Inc.; Deutsche Bank National Trust Company; Benjamin T. Staskiewicz, Esq.; S. Bruce Fair, Esq.; and Hunt Leibert Jacobson, PC.  Attorney Valerie Doble, who is a Defendant herein, was defense counsel for Deutsche Bank in the state court action.

state court judgments. Specifically, Plaintiffs allege that they will be deprived of their property at 54 Abbe Road, East Windsor, Connecticut, due to "bad banking practices, predatory lending, false claim[s] [of] abandonement [sic], and other fraud" by Defendants. *See* Doc. 9 ("History"), ¶ 2; *see also id.*, ¶ 5 (alleging "[c]laims are brought pursuant [to] bank negligence, predatory lending, fraud and other torts"), *id.*, ¶ 34 (alleging blatant "[f]raud and contradictions . . . by defendants). In their Amended Complaint, Plaintiffs thus request, *inter alia*, "[a] judgment for plaintiff[s] to retain full possession of [the] property" in East Windsor. *Id.* ("Notice of Claims"), ¶ 1.

Third, in challenging the state court's judgments, including foreclosure, the Plaintiffs invite this Court to review and reject those judgments, which were clearly unfavorable to them. In federal court, Plaintiffs have presented the same issues for the third time – the validity of the Mortgage Loan and opposition to foreclosure on the East Windsor Property – that they raised, or could have raised, in their state court actions. Where "the issues raised in a plaintiff's complaint are inextricably intertwined with a state court judgment" so that "the federal claim would succeed only if the state court wrongly decided the issue," the Rooker-Feldman factors are present.[14] *See, e.g.*, *Barnett v. Conn. Light & Power Co.,* 900 F.Supp. 2d 224, 241 (D.Conn. 2012) (quoting *Dockery v. Cullen & Dykman*, 90 F.Supp.2d 233, 236 (E.D.N.Y. 2000), *aff'd*, 2 F. App'x 78 (2d Cir. 2001)); *Rene v. Citibank*, N.A., 32 F.Supp.2d 539, 543 (E.D.N.Y.1999) (same).

---

[14] "In the Rooker–Feldman doctrine, the Supreme Court's use of 'inextricably intertwined' means, at a minimum, that where a federal plaintiff had an opportunity to litigate a claim in a state proceeding (as either the plaintiff or defendant in that proceeding), subsequent litigation of the claim will be barred under the Rooker-Feldman doctrine if it would be barred under the principles of preclusion." *Weiss v. Weiss*, 375 F.Supp. 2d 10, 18 (D.Conn. 2005) (citation and internal quotation marks omitted). "Stated another way, a federal claim is 'inextricably intertwined' with the state-court judgment if the relief sought may be granted only on the federal court's finding that the state court determined the issues before it erroneously." *Weiss*, 375 F.Supp. 2d at 18 (quoting *Pennzoil Co. v. Texaco Inc.,* 481 U.S. 1, 25 (1987) (plurality opinion)).

With respect to the fourth Rooker-Feldman factor, entry of the state court judgment prior to Plaintiffs' initiation of the federal lawsuit, Plaintiffs commenced this latest action in federal court on January 16, 2014. The state court judgment of foreclosure preceded this federal action by years. *See Deutsche Bank National Trust Co. v. Gonzalez*, HHD-CV10-6011071-S (Conn. Super. Ct. 2010) ("Judgment of Strict Foreclosure," 7/28/2011, and "Execution of Ejectment Issued," 10/31/2011).[15] The state court clarified that the foreclosure judgment was final when later denying a motion to open judgment by Luis Gonzalez's present co-plaintiff and wife, Sonia Urdinola (a/k/a Gonzalez).[16] The docket in that action also reflects that Deutsche Bank provided the requisite

---

[15]   The Court notes that Plaintiffs' later attempt to avoid foreclosure in Connecticut Superior Court, Judicial District of Hartford, was also unsuccessful. *See Gonzalez v. Option One Mortgage*, HHD-CV11-5035882-S (Conn. Super. Ct. 2011).

[16]   In *Deutsche Bank v. Gonzalez*, in denying plaintiff Sonia Urdinola's motion to open judgment of strict foreclosure, the state court clarified that it considered the judgment final, as follows:

> *The court entered a judgment of strict foreclosure in this matter on July 18, 2011, and title vested in the plaintiff on September 29, 2011.* The defendant, Sonia Urdinola, entered her appearance in the case on March 3, 2014, and filed a motion to open judgment arguing that the judgment should be opened because the plaintiff did not file a "Certification of Compliance with Foreclosure Procedures" with the clerk, because the plaintiff lacks standing as the real party in interest to bring this action, and she also supplies information showing that she and the the [sic] defendant, Luis Gonzales, have health problems. Due to the fact that the motion is so late, the court, ordinarily, has no jurisdiction to grant it. General Statutes § 49-15; *Thompson Gardens West Condominium Ass'n, Inc. v. Masto*, 140 Conn. App. 271, (2013). There are exceptions in cases where the court obviously lacked subject matter jurisdiction, *Argent Mortgage Co., LLC v. Huertas*, 288 Conn. 568, 576 (2008), or where the equities are so strong that "the principle of protection of finality of judgments must give way to the principle of fairness and equity." (Citation omitted; internal quotation marks omitted.) *Citibank v. Lindland*, 131 Conn. App. 653, 661, (2011), *aff'd in part and rev'd in part on other grounds*, 310 Conn. 147 (2013). This is not such a case. First, there is no "Certification of Compliance with Foreclosure Procedures" that must be filed in this action. . . .  Second, the issue of standing was already raised in this case. . . .  The issue was resolved in favor of the plaintiff on

affidavit of debt and foreclosure worksheet [Doc. 124, 125] to enable the court to make the necessary calculations of debt and issue an Execution of Ejectment [Doc. 135].   Under Connecticut law, "a judgment of foreclosure constitutes an appealable final judgment when the court has determined the method of foreclosure and the amount of the debt." *Moran v. Morneau*, 129 Conn.App. 349, 356 (2011) (quoting *Danzig v. PDPA, Inc.*, 125 Conn.App. 254, 261 (2010), *cert. denied*, 300 Conn. 920 (2011)).

Moreover, the second state court action, brought by Plaintiffs against many of the Defendants herein resulted in a second state court judgment which is inextricably linked with the issues presented to this Court.  That second action was dismissed and judgment entered in favor of the Hunt Leibert Defendants on August 9, 2012 –  prior to the filing of this federal action.[17]

The Second Circuit has held that the Rooker–Feldman doctrine applies not only to final orders, such as the entry of strict foreclosure, but also to interlocutory decisions, such as the dismissal of the case against the Hunt Leibert Defendants. *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (noting that the "doctrine applied both to final state court judgments and to interlocutory state court orders"); *Doctor's Associates, Inc. v. Distajo*, 107 F.3d 126, 138 (2d Cir. 1997) ("It cannot

---

March 28, 2011. Doc. No. 114.86. There is no justification to relitigate the point. *See Urban Redevelopment Commission v. Katsetos*, 86 Conn. App. 236, 243 (2004), *cert. denied*, 272 Conn. 919 (2005). And, current health problems are not justification to open a judgment entered over two and a half years ago. All other of defendant's arguments have no merit. Accordingly, the motion is dismissed.

Doc. 145.00 (Order, dated 3/20/2014) (emphasis added) (parallel citations omitted).

[17] As this Court has previously noted, Plaintiffs neither appealed the motion to dismiss the action against the Hunt Leibert Defendants nor preserved their right to appeal by filing a notice of intent to appeal, pursuant to Conn. R. App. P. § 61-5.   Accordingly, the state court judgment as to the Hunt Leibert Defendants is final.

be the meaning of Rooker-Feldman that, while the inferior federal courts are barred from reviewing final decisions of state courts, they are free to review interlocutory orders.") (citation omitted); *Gentner v. Shulman,* 55 F.3d 87, 89 (2d Cir.1995) ( "Under [the Rooker-Feldman] doctrine, federal district courts lack jurisdiction to review state court decisions whether final or interlocutory in nature").

In sum, as to the foreclosure action, the state court ruled that the judgment of strict foreclosure in favor of Deutsche Bank was final.  Attempts to reopen that judgment have been denied.  Furthermore, with respect to Plaintiffs' subsequent action in state court to avoid foreclosure, although the interlocutory dismissal pertained only to the Hunt Leibert Defendants, the issues in that state action were inextricably intertwined with the issues now presented in the federal action. Because the Rooker–Feldman applies to both final and interlocutory orders,  this Court lacks subject matter jurisdiction over Plaintiffs' federal action.

Furthermore, even though Plaintiffs allege that the state court judgments resulted from fraud, Rooker-Feldman still bars their federal claims.[18] *See, e.g., Astoria Federal Sav. & Loan Ass'n*, 2012 WL 4355550, at *2  ("Even where a plaintiff alleges that a state court judgment was procured by fraud, Rooker-Feldman will divest the federal court of jurisdiction.")  (citing *Done*, 2009 WL 2959619, at *3 n. 6).  Thus, "even if the state court judgment was wrongly procured, it is effective and conclusive until it is modified or reversed in the appropriate State appellate or collateral proceeding."  *Simpson v. Putnam County Nat'l Bank of Carmel*, 20 F.Supp.2d. 630, 633 (S.D.N.Y.1998) (citation omitted).

---

[18] In their Amended Complaint [Doc. 9], Plaintiffs once again allege that "fraud" was committed by Defendants with respect to the mortgage foreclosure.  *See* Doc. 9, introductory paragraph; *id.*, ("History"), ¶¶ 2, 5, 7, 14, 24, 34, 37, 40;  *id.*, ("Notice of Claims"), ¶ 2.

Because Plaintiffs seek review and reversal of prior unfavorable state court judgements in a later federal action, this Court lacks subject matter jurisdiction pursuant to the Rooker-Feldman doctrine. *See, e.g., Aluria*, 2013 WL 2286051, at *1 ("Plaintiff's action invites this court to review and reject the judgment rendered in the foreclosure action prior to plaintiff's commencement of this action;" and "[t]hus, plaintiff's challenge to a judgment of foreclosure issued by the state superior court satisfies the Rooker-Feldman factors, and the Court lacks subject matter jurisdiction to resolve plaintiff's request for relief."). Construing the language of the Amended Complaint in its broadest terms, there is a clear relationship between the state court judgments and the injury Plaintiffs seek to redress in federal court. Plaintiffs lost in the foreclosure action and lost against the Hunt Leibert Defendants in Plaintiff's state action to attempt to avoid foreclosure. Plaintiffs may not now re-litigate the validity of the foreclosure in federal court.

**B.**   **Failure to State a Claim upon Which Relief May Be Granted**

In the absence of subject matter jurisdiction, the Court need not decide whether the Complaint states any viable claims. *See* Fed. R. Civ. P. 8, 12(b)(6).[19] However, as an alternative basis for dismissal (*i.e.*, if subject matter jurisdiction were deemed to exist), the Court finds that the allegations in the Complaint fail to set forth any claims upon which relief may be granted.[20] *See Gherardi v. New York*, 161 F. App'x 60, 61 (2d Cir. 2005) ("An alternative holding may be

---

[19]   Rule 8(a)(2) mandates that "a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) permits a party to assert by motion the defense of "failure to state a claim upon which relief can be granted." *Id.* 12(b)(6).

[20]   For example, with respect to Rooker-Feldman, to the extent that Plaintiffs have attempted to assert any causes of action that are independent of the prior state court judgments, those allegations fail to state any claim upon which relief could be granted.

considered conclusive in a subsequent proceeding where, as here, the litigants had the incentive and opportunity to address the issue, and the issue was carefully considered by the court.").

"In the Second Circuit, the district court has the authority to dismiss actions *sua sponte* in the rare case when it faces a truly frivolous suit." *Byars v. Malloy*, No. 3:11cv17 (SRU), 2011 WL 4538073, at *5 (D.Conn. Sept. 29, 2011) (citing *Abrams v. Sprizzo*, 201 F.3d 430, 1999 WL 1295815 (Table), at *1 (2d Cir. 1999)). *See also Leonhard v. United States*, 633 F.2d 599, 609 n. 11 (2d Cir.1980) ("[t]he district court has the power to dismiss a complaint *sua sponte* for failure to state a claim") (citing *Robins v. Rarback*, 325 F.2d 929[, 930] (2d Cir. 1963), *cert. denied*, 379 U.S. 974 (1965)); *Mallard v. U.S. District Court for Southern District of Iowa*, 490 U. S. 296, 307-08 (1989) (although in the context of *in forma pauperis* proceedings, a particular statute, 28 U.S.C. § 1915(d), "authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have power to do so even in the absence of this statutory provision").

An action is frivolous as a matter of law when "the 'factual contentions are clearly baseless,' such as when allegations are the product of delusion or fantasy," when "the claim is 'based on an indisputably meritless legal theory,'" or when "a dispositive defense clearly exists on the face of the complaint."[21] *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir.1998) (quoting *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir.1990) (*per curiam*)).

The Second Circuit has repeatedly advised leniency in interpreting *pro se* litigant's

---

[21] As Judge Underhill explained in *Byars*, 2011 WL 4538073, at *5 n. 2:

By "frivolous[,]" the court does not mean to suggest that [Plaintiff] has not suffered harm, or that his . . . claims should not be treated with care and respect. Rather, this court only uses "frivolous" as a term of art applicable in this case because it is legally impossible for Plaintiff to obtain relief.

complaints – reminding courts that "pro se litigants . . . cannot be expected to know all of the legal theories on which they might ultimately recover" so that "[i]t is enough that they allege that they were injured, and that their allegations can conceivably give rise to a viable claim." *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir.2005). A court must therefore allow its "imagination [to] be limited only by [the plaintiff]'s factual allegations, not by the legal claims set out in his pleadings." *Ford v. New Britain Trans. Co.*, Case No. 3:03cv150 (MRK), 2005 WL 1785269, at *1 (D.Conn. July 26, 2005) (quoting *Phillips*, 408 F.3d at 130).

"Importantly, however, the Court is not required to engage in 'rank speculations' in an effort to manufacture a federal claim for *pro se* plaintiffs, *Ford*, 2005 WL 1785269 at *5, and thus, a court may dismiss a complaint if it appears beyond doubt that no set of facts could be proven that would establish an entitlement to relief." *Rzayeva v. United States*, 492 F.Supp.2d 60, 70 (D.Conn. 2007) (citing *Weixel v. Bd. of Educ. of New York*, 287 F.3d 138, 145–46 (2d Cir.2002)).

The Second Circuit has held that in general, a district court cannot dismiss a claim *sua sponte* unless the plaintiff has been given notice of the court's intention to dismiss and the opportunity to respond. *See Perez v. Ortiz*, 849 F.2d 793, 797–98 (2d Cir.1988). Providing notice and an opportunity to be heard generally ensures that "a litigant can continue to fight his case by, for example, amending his complaint or clarifying his legal theory," enabling him to "secure a just determination." *Byars*, 2011 WL 4538073, at *5 n.3 (quoting *Perez*, 849 F.2d at 797).

However, the Second Circuit has also acknowledged that "*sua sponte* dismissals may be appropriate in some circumstances." *Perez*, 849 F.2d at 797 (citing, *inter alia, Leonhard*, 633 F.2d at 609 n. 11, *Robins*, 325 F.2d 929). *See also Snider v. Melindez*, 199 F.3d 108, 113 (2d Cir. 1999) (noting that "[u]nless it is unmistakably clear that the *court lacks jurisdiction*, or *that the complaint*

*lacks merit or is otherwise defective*," there must be notice) (emphasis added).  Numerous courts, including this District, have thus properly dismissed  actions *sua sponte* without notice where "further hearings and filings are unnecessary because the plaintiff seeks a legal impossibility." *Byars*, 2011 WL 4538073, at *5 n.3.  *Accord Baker v. Director, U. S. Parole Comm'n*, 916 F.2d 725, 726-27 (D.C. Cir. 1990) (failure to "enforce a strict notice requirement with regard to *sua sponte* dismissals" is justified and "appropriate" where "the plaintiff has not advanced a shred of a valid claim" so that notice "can only lead to a waste of judicial resources"); *McKinney v. Oklahoma., Dept. Of Human Services, Shawnee OK*, 925 F.2d 363, 365 (10th Cir. 1991) ("Although the preferred practice is to accord a plaintiff notice and an opportunity to amend his complaint before acting upon a motion to dismiss for failure to state a claim, we agree with and adopt the reasoning of the D.C. Circuit [in *Baker*, 916 F.2d at 726-27] and hold that a *sua sponte* dismissal under Rule 12(b)(6) is not reversible error when it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, . . . and allowing him an opportunity to amend his complaint would be futile.").

The case at bar is the rare situation in which *sua sponte* dismissal without prior notice to the Plaintiffs is appropriate.  Plaintiffs' Amended Complaint patently fails to state any viable claims, naming no particular cause of action, much less attempting to plead the elements of any cognizable claim.  Rather, Plaintiffs make broad references to "bad banking practices," "fraud," "conspiracy," and "unconstitutional" behavior without setting forth any supporting facts.  Furthermore, Plaintiffs alternatively cite constitutional amendments and UNDRIP articles, misconstruing a United Nations declaration as a legally binding authority.   Doc. 9 (introduction), p. 1.  Plaintiffs thus assert  that failure to follow UNDRIP is a violation of "constitutional articles."  *Id.*  Similarly, Plaintiffs reference a decree of Pope Francis in July 2013 as the jurisdictional basis for their claim.  *Id.*

("History"), ¶ 4.  As in Plaintiffs' prior action, the Court finds it "impossible to extract [the] claims from the 'mass of verbiage' contained in the present Complaint."  *Callan v. Paulson*, No. 3:08-cv-01625 (CSH), 2009 WL 1011344, at *4 (D.Conn. April 15, 2009).

Although a *pro se* complaint must be liberally construed to raise the strongest arguments it may suggest, *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir.2007), *pro se* litigants are nonetheless obligated to  comply with the minimal standards of notice pleading under Rule 8, Fed. R. Civ. P. *See, e.g., Nielsen*, 746 F.3d at 63.  In other words, "a pro se complaint must state a plausible claim for relief." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).  *See also Collins v. Blumenthal*, 581 F. Supp. 2d 289, 291 (D. Conn. 2008) ("[T]he rule in favor of liberal construction cannot save pro se litigants who do not present cognizable arguments.").  Moreover, "[d]ismissal of a complaint is proper when it is 'so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised.'" *Little v. U.S. Postal Service*, No. 3:99CV887(PCD), 2002 WL 32191568, at *1 (D.Conn. Jan. 18, 2002) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)).

Here "it is pointedly clear that the complaint at bar runs afoul of Rule 8," containing only "vague and incomprehensible allegations."  *Lonesome v. Lebefeff*, 141 F.R.D. 397, 398 (E.D.N.Y. 1992).  Where the Amended Complaint is fatally vague, ambiguous, or otherwise unintelligible, it is properly subject to  dismissal as "frivolous."

## C.    Lack of Service

This case may also be properly dismissed for lack of service.  On January 16, 2014, Plaintiffs filed their "Complaint" against the named mortgage companies, banks, and individual attorneys and mortgage executives. *See* Doc. 1.  Two months elapsed and Plaintiffs failed to serve their Complaint

and Summons on Defendants.  On March 20, 2014, Plaintiffs filed an Amended Complaint [Doc. 9],  but again failed to either serve their complaint and summons upon the Defendants or to provide "good cause" for said  failure to serve.[22]

Pursuant to Rule 4(c)(1), Fed. R. Civ. P.,  the party initiating an action "is responsible for having the summons and complaint served  within the time allowed by Rule 4(m)," – *i.e.*, "within 120 days after the complaint is filed."  Moreover, "[i]f a defendant is not served within [those] 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  Fed. R. Civ. P. 4(m).

As set forth *supra*, more than 120 days have expired  without service of the Amended Complaint and Summons upon Defendants.  Absent such service, this Court lacks jurisdiction over the Defendants as parties.  In such circumstances, "[a]bsent proper service and personal jurisdiction, the court would normally dismiss the complaint," *Funches v. Conn. Dep't of Pub. Health*, No. 3:08–CV–1714 (RNC), 2010 WL 122445, at *1 (D.Conn. Jan. 7, 2010).  *See also* Fed. R. Civ. P. 4(m) (court must dismiss  without prejudice or order service after 120 days);  *Eiden v. McCarthy*, 531 F.Supp. 2d 333, 343 (D.Conn. 2008) ("A motion to dismiss pursuant to Rule 12(b)(5) must be granted if the plaintiff fails to serve a copy of the summons and complaint on the defendants

---

[22]   In their Amended Complaint, Plaintiffs make reference to service of the complaint in another action to some of the Defendants named herein.  Plaintiffs appear not to comprehend that service of a complaint in a prior action does not excuse service in the present one. Doc. 9 ("History"), ¶¶ 23, 43, 49. Similarly,  Plaintiffs argue that certain Defendants "cannot say they were insufficiently served . . . if they had . . . prior knowledge of the complaint against them." *Id.*, ¶ 33.  A defendant's possible knowledge of a complaint is not sufficient to excuse a plaintiff from providing the requisite service of that complaint, along with a summons, upon that defendant.  Otherwise, unreliable statements about the possible existence of litigation would replace service and effectively destroy defendants' right to notice of being sued.

pursuant to Rule 4 of the Federal Rules, which sets forth the federal requirements for service.") (citation omitted).

At this point, if the Court had subject matter jurisdiction, the Court would ordinarily grant Plaintiffs a brief additional period within which to effect proper service before dismissing the complaint without prejudice. For the reasons set forth *supra*, however, the Court finds that granting Plaintiffs additional time for service would be futile because their Complaint is fatally defective in that it sets forth "frivolous" claims which cannot be remedied by amendment. *See* Part III.B, herein.

### D.   **Failure to Prosecute**

Finally, the Court notes that Plaintiffs have failed to take the requisite actions to prosecute this action under Federal Rule 41(b) of Civil Procedure.[23] Because they have failed to even serve the Amended Complaint and Summons, the Defendants have not appeared. Consequently, the parties failed to meet and confer to file a joint Rule 26(f) Report, which would have resulted in the Court's entry of a scheduling order to set case deadlines, including those for discovery.

The only actions Plaintiffs have taken have been legally impermissible. For example, without even serving Defendants with the Amended Complaint, Plaintiffs have requested discovery from them via two motions filed with the Court. *See* Doc. 2 ("Request for Disclosure") and Doc. 3

---

[23] Pursuant to Federal Rule 41(b) of Civil Procedure, "[i]f the plaintiff fails to prosecute or to comply with these [R]ules . . . a defendant may move to dismiss the action or any claim against it" and such a dismissal ordinarily "operates as an adjudication on the merits." Similarly, under Local Rule 41(a) of Civil Procedure, "[i]n civil actions in which no action has been taken by the parties for six (6) months . . . , the Clerk shall give notice of proposed dismissal to counsel of record and pro se parties, if any." D. Conn. L. Civ. R. 41(a) ("Dismissal of Actions – For Failure to Prosecute"). "If such notice has been given and no action has been taken in the action in the meantime and no satisfactory explanation is submitted to the Court within twenty (20) days thereafter, the Clerk shall enter an order of dismissal." *Id.*

("Motion for Discovery & Disclosure").   The discovery period has not officially begun in that no Rule 26(f) Report has been filed, much less approved. *See* Fed. R. Civ. P. 26(d)(1) (captioned "Timing") ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f) . . . .").   Furthermore, even after the Court enters a case scheduling order, discovery requests should not be filed with the Court, but rather served on the party from whom discovery is sought.  *See* Fed. R. Civ. P. 34. Unless or until the parties confer in good faith and are unable to resolve their differences, they should not file a request for discovery or motion to compel with the Court.  *See* Fed. R. Civ. P. 37 (a) (a motion to compel discovery "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action").

In addition, Plaintiffs' self-styled "motion for a stay" relates to  the Connecticut state court's final order of foreclosure, directing ejectment of Plaintiffs from the  East Windsor Property. *See Deutsche Bank National Trust Co. v. Gonzalez*, HHD-CV10-6011071-S  (Conn. Super. Ct. 2010) ("Judgment of Strict Foreclosure," 7/28/2011, and "Execution of Ejectment Issued," 10/31/2011). A stay of the state court's Execution of Ejectment  is the same relief Plaintiffs have repeatedly sought in all of their prior proceedings.  For at least the third time,  Plaintiffs seek to prevent execution of the state court's ruling of foreclosure in federal court.   As set forth *supra*, that challenge is barred by the Rooker-Feldman doctrine.  *See* Part III.A.2., *supra.*

Since the date Plaintiffs filed the Amended Complaint on March 20, 2014, other than the aforementioned improper motions, Plaintiff have taken no action, failing to effect service and

prosecute in almost a year.[24]   Pursuant to both Rule 41(b), Fed. R. Civ. P., captioned "Involuntary Dismissal," and or Local Rule 41(a), D. Conn. L. Civ. R., upon notice to a plaintiff, his or her action may be subject to dismissal for failure to prosecute.

Even with the Court's exercise of leniency toward *pro se* litigants, affording them "special solicitude," as directed by the Second Circuit, *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (*per curiam*), *pro se* litigants are expected to comply with the Federal Rules of Civil Procedure, *McDonald v. Head Criminal Court Supervisor Officer*, 850 F.2d 121, 124 (2d Cir.1988).   Failure to follow the Federal Rules may result in dismissal of a *pro se* plaintiff's pleadings or claims. *See, e.g. McNally v. O'Flynn*, No. 09-CV-621S(F),  2010 WL 891151,  at *1- 2 (W.D.N.Y. Mar. 10, 2010) *Baez v. Kennedy Child Study Center*, No. 11 Civ. 7635(JMF), 2013 WL 705913, at *1 (S.D.N.Y. Feb. 27, 2013).

Under other circumstances, the Court would simply deny the improper motions and provide Plaintiffs with an additional twenty days to serve the complaint and summons and  prosecute their action – or provide a "satisfactory explanation"  for  failure to do so – before dismissing the Amended Complaint.  Here,  however, additional time would be pointless. As set forth, *supra*, the  Amended Complaint is subject to *sua sponte* dismissal in that it sets forth exclusively  frivolous and/or  legally impossible claims.  *See* Part III.B., *supra*.

E.     **Bankruptcy Petition of Sonia Gonzalez**

Finally, the Court takes judicial notice that Plaintiff Sonia Gonzalez filed a voluntary Chapter

---

[24]   Plaintiffs' latest filing was the "Pope's Decree," an apostolic letter, filed June 16, 2014. Plaintiffs filed no accompanying memorandum to explain the significance of the filing, but the Court deduces from the Amended Complaint that Plaintiffs consider this document the basis for the Court's jurisdiction over this matter.  Doc. 9 ("History"), ¶ 4.

13 petition in bankruptcy on the same date that she filed this action, January 16, 2014.[25]  *See In re Sonia U. Gonzalez*, No.14-20063 (Bankr. D. Conn. January 16, 2014).   A debtor who files a bankruptcy petition obtains an automatic stay of proceedings under 11 U.S.C. § 362(a)(1) for "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case" in the bankruptcy court.  The stay is effective immediately upon the filing of the petition, *Shimer v. Fugazy* (*In re Fugazy Express, Inc.*), 982 F.2d 769, 776 (2d Cir.1992).

A filing receipt on the bankruptcy docket shows that Sonia Gonzalez filed her bankruptcy petition at 4:36 p.m. on January 16, 2014.  On the same date, she manually filed her Complaint to commence this action in federal court.  It is impossible to tell whether her bankruptcy petition was filed before or after the Complaint in this federal action.  Nonetheless, she apparently attempted to initiate the two actions on the same date.  The electronic filing receipt in this case shows that the original Complaint was "entered" by the Clerk on the docket "on 1/17/2014 at 4:28 p.m.," but "filed on 1/16/2014."

In any event, Sonia Gonzalez's bankruptcy filing has no effect on the ability of this Court to ascertain its subject matter jurisdiction and dismiss the action at this time.  The Second Circuit has repeatedly held that where an action is commenced by, rather than against, a debtor, said action does not fall within the scope of the automatic stay.  *See, e.g., Koolik v. Markowitz,* 40 F.3d 567, 568 (2d Cir. 1994) (*per curiam*) ("This Court has recognized that the automatic stay is applicable only to proceedings 'against,' 11 U.S.C. § 362(a)(1), the debtor.");  *In re Berry Estates, Inc.*, 812 F.2d 67,

---

[25]   To date, Plaintiffs, the only parties currently of record in this action due to their failure to serve Defendants, have not provided the Court with notice of Sonia Gonzalez's bankruptcy.

71 (2d Cir. 1987) ("The State court actions were brought by [the debtor] and were not subject to either an automatic stay, or an ordered stay;" holding automatic stay provision applicable only to actions against the bankrupt or to seizures of property of the bankrupt) (internal citation omitted), *cert. denied*, 484 U.S. 819 (1987).  *See also  In re Kauffman,* 254 B.R. 781, 785 (Bankr. D.Conn. 2000) ("the automatic stay provision does not prevent entities against whom the debtor proceeds in an offensive posture . . . from protecting their legal rights")*.* [26]

Because Sonia Gonzalez commenced this action in an offensive posture on the very day she filed her bankruptcy petition, it is clear that she filed it with intent to pursue and/or protect her perceived legal rights.  This action was plainly not filed "against the debtor" within the meaning of 11 U.S.C. § 362(a)(1).  No automatic stay applies to this case.

Moreover, even were the Court to conclude otherwise – *i.e.*, to construe the application of 11 U.S.C. § 362(a) to encompass Plaintiffs' federal action as potentially affecting Sonia Gonzalez's

---

[26]   *See also Victor Foods, Inc. v. Crossroads Econ. Dev. of St. Charles County, Inc.*, 977 F.2d 1224, 1226-27  (8th Cir.1992) (debtor's "bankruptcy does not toll the statute because the automatic stay applies to actions filed against rather than by" debtor)*; Martin–Trigona v. Champion Fed. Sav. and Loan Ass'n*, 892 F.2d 575, 577 (7th Cir.1989) (recognizing that "[t]he Second and Third Circuits have held the automatic stay applicable only to actions against the bankrupt or to seizures of property of the bankrupt");  *Carley Capital Group v. Fireman's Fund Ins. Co.*, 889 F.2d 1126 (D.C. Cir.1989)(*per curiam*) (the automatic stay provision of section 362 "by it terms only stays proceedings against the debtor," and "does not address actions brought by the debtor which would inure to the benefit of the bankruptcy estate") (footnote omitted); *In re Financial News Network Inc.,* 158 B.R. 570, 573 (S.D.N.Y. 1993) ("Since section 362 mandates a stay only of litigation 'against the debtor' designed to seize or exercise control over the property of the debtor, 11 U.S.C. § 362(a), it does not prevent entities against whom the debtor proceeds in an offensive posture – for example, by initiating a judicial or adversarial proceeding – from "protecting their legal rights."). *Accord DiLieto v. County Obstetrics and Gynecology Group*, No. CV970150435S, 2000 WL 278699, at *2 (Conn. Super. Ct. Feb. 29, 2000) ("federal cases construing 11 U.S.C. § 362(a)(3) have consistently limited its application to proceedings against debtors, not actions brought by them.") (collecting cases).

property as a debtor, the outcome would be no more fortuitous for Plaintiffs. Under those circumstances, the automatic stay would preclude the action from its commencement, rendering it void *ab initio*. *See, e.g.*, *Wright v. Tarragon Management, Inc.*, NO. KNLCV116011620, 54 Conn. L. Rptr. 10, 2012 WL 2044564, at *2   (Conn Super. Ct. May 11, 2012) ("[T]he automatic stay precludes the filing of this matter because the bankruptcy proceedings were instituted before the present action was filed;" and, "[a]s a result, the plaintiff's commencement of this case is in violation of the automatic stay, and is void ab initio and of no effect.")   An action commenced in violation of the automatic stay is void *ab initio*. Consequently, the Court would lack jurisdiction to consider this matter from its very inception.

    In the case at bar, the Bankruptcy Court dismissed  Plaintiff's bankruptcy petition on March 31, 2004 [Bankruptcy Case No. 14-20063, Doc. 27];[27] and the case was concluded on April 17, 2014. Even were this Court to retroactively consider the present case stayed during the bankruptcy proceedings, and then revived upon their termination on April 17, 2014, the Court would still be obligated to dismiss the action for lack of subject matter jurisdiction for the reasons stated *supra.* The Court has no "federal question" or "diversity of citizenship" subject matter jurisdiction. Moreover, due to the substance of Plaintiffs'  "claims" in the action, it is barred by the Rooker-Feldman doctrine. [28]

---

    [27]   *See* Bankruptcy Case No.  14-20063, Doc. 27 ("Order Dismissing Chapter 13 Case," filed March 31, 2014).

    [28]   The  record of Gonzalez's bankruptcy case also reflects that upon motion by Deutsche Bank and after a hearing, the Bankruptcy Court (Dabrowski, *C.J.*) specifically granted Deutsche Bank relief from the automatic stay pursuant to 11 U.S.C. § 362(d) to permit Deutsche Bank to "commence, continue and prosecute an eviction with respect to the real property located at 54 Abbe Road, East Windsor, CT 06088, in accordance with state law." *See* Bankruptcy Case No. 14-20063, Doc. 25 ("Order Granting Motion for Relief from Stay," filed March 10, 2014).

## IV.  CONCLUSION

For the above-mentioned reasons, Plaintiffs' Amended Complaint [Doc. 9] is DISMISSED WITH PREJUDICE.  Plaintiffs' pending motions, requesting discovery from Defendants [Doc. 2 and 3] and a stay of ejection from the East Windsor Property [Doc. 6]  are all DENIED AS MOOT.

Plaintiffs have now brought three federal actions in this Court regarding the Connecticut state court's foreclosure of real property located at 54 Abbe Road in East Windsor, Connecticut.  Plaintiffs are cautioned that it is an abuse of the federal justice system to repeatedly re-file claims which have been dismissed with prejudice by the Court in an attempt to revive them.  Plaintiffs are thus cautioned that future initiation of another action in this Court – the filing of complaints, petitions, or other pleadings –  regarding the foreclosure of the East Windsor Property will once again violate the Rooker-Feldman doctrine.  Any such action will be regarded as "frivolous," subjecting Plaintiffs not only to dismissal but to  possible imposition of a fine pursuant to Rule 11, Fed. R. Civ. P.

The Clerk is directed to close the file.

It is SO ORDERED.

Dated: New Haven, Connecticut
       February 25, 2015


                              /s/Charles S. Haight, Jr.
                              CHARLES S. HAIGHT, JR.
                              Senior United States District Judge

32