# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

LUIS GONZALEZ and SONIA GONZALEZ,

      Plaintiffs,

v.

OCWEN HOME LOAN SERVICING, SAND CANYON CORPORATION, DALE M. SUGIMOTO, FABIOLA N. CAMPERI, MATTHEW A. ENGEL, WILLIAM S. SMITH, LEOPOLD & ASSOCIATES, OPTION ONE MORTGAGE CORPORATION, AMERICAN HOME MORTGAGE SERVICE, INC., DEUTSCHE BANK NATIONAL TRUST COMPANY, SOUNDVIEW HOME LOAN TRUST 2005-OPT3, HUNT LEIBERT JACOBSON PC, BENJAMIN T. STASKIEWICZ, S. BRUCE FAIR, ESQ., JON DOE, JAN DOE, HINSHAW & CULBERTSON, LLP, VALERIE NICOLE DOBLE,

      Defendants.

Civil Action No.
3:14 - CV - 53 (CSH)

MAY 6, 2015

## RULING ON PLAINTIFFS' MOTION TO REARGUE AND REQUEST FOR JUDGE TO RECONSIDER/ARTICULATE [Doc. 15]

**HAIGHT, Senior District Judge**:

## I.   INTRODUCTION

*Pro se* Plaintiffs Luis Gonzalez and Sonia Gonzalez brought this action against various

defendant mortgage companies, banks, and individuals (counsel to and executives for said mortgage

companies and banks), alleging violations of the United States Constitution and the United Nations

Declaration on the Rights of Indigenous Peoples, "banking fraud," and conspiracy with respect to

the foreclosed mortgage of 54 Abbe Road, East Windsor, Connecticut (the "East Windsor Property").[1]  On February 25, 2015, the Court entered an "Order of Dismissal" [Doc. 13], dismissing Plaintiffs' action with prejudice.  *See Gonzalez v. Ocwen Home Loan Serv.*, 3:14-CV-53 (CSH), __F.Supp. 3d __, 2015 WL 778432 (D.Conn. Feb. 25, 2015).[2]   In particular, the Court dismissed the  action in its entirety because the Court determined that it lacked subject matter jurisdiction and the complaint failed to set forth any claims upon which relief may be granted in that it contained only frivolous or legally impossible claims.[3]  2015 WL 778432, at *4-11.  Furthermore, the Court found that  Plaintiffs failed to serve Defendants with process (the summons and complaint), Fed. R. Civ. P. 4(c)(1), 4(m),  and failed to prosecute the action for more than six months, Fed. R. Civ. P. 41(b),

---

[1]  Plaintiffs also included two defendants with the  generic names of  "Jon Doe" and "Jan Doe."  It is unclear whom Plaintiffs sought to represent with these designations.

[2]  The full facts and circumstances of the case are  set forth in the February 25 Order, familiarity with which is assumed.  *See also Gonzalez v. Option One Mortg. Corp.*, No. 3:12-CV-1470 (CSH), 2014 WL 2475893, at *1 (D.Conn. June 3, 2014) (dismissing prior federal case in which Plaintiffs also challenged foreclosure on East Windsor Property); *Gonzalez v. United States*, No. 3:13-CV-650 (CSH), 2014 WL 3738179, at *1 (D.Conn. July 29, 2014) (same).

[3]  With respect to lack of subject matter jurisdiction, Plaintiffs' claims presented no grounds for "federal question" jurisdiction, 28 U.S.C. § 1331; and there was also no complete "diversity of citizenship" in that Plaintiffs and multiple defendants were all citizens of Connecticut at the commencement of the action. *See* 28 U.S.C. ¶ 1332(a) ("[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is *between . . . citizens of different States*") (emphasis added).

 Plaintiffs' claims were also barred by the "Rooker-Feldman" doctrine in that Plaintiffs sought to challenge final state court judgments, which foreclosed on the East Windsor property and passed title to Deutsche Bank.  *See Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). For the Rooker–Feldman doctrine to apply, (1) a plaintiff must have lost in state court; (2) his injury must have been caused by a state court judgment; (3) he must have invited federal review of that state court judgment; and (4) the state court judgment must have been entered before his federal suit commenced. *McKithen v. Brown*, 481 F.3d 89, 97 (2d Cir.2007). This Court therefore lacked jurisdiction to consider Plaintiffs' claims.

both constituting alternative grounds for dismissal.[4]   *Id.*, at *11-14.

## II.  DISCUSSION

Pending before the Court is Plaintiffs' "Motion to Reargue and Request for Judge to Reconsider/Articulate" [Doc. 15].  The Court construes this *pro se* motion as one for reconsideration and/or oral argument with respect to the Court's  "Order of Dismissal" of Plaintiffs' Amended Complaint [Doc. 13].    The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995); *accord Mir v. Shah,* 569 F. App'x 48, 50 (2d Cir. 2014) (same).  *See also Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.1992), *cert. denied*, 506 U.S. 820 (1992) ("The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'") (quoting 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4478 at 790); *Kolel Beth Yechiel  Mechil of Tartikov, Inv. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (same) (citing *Virgin Atl. Airways*, 956 F.2d at 1255).

"It is well-settled that a motion for reconsideration is 'not a vehicle for relitigating old issues,

---

[4]  The Court clarified that it "would ordinarily grant Plaintiffs a brief additional period within which to effect proper service before dismissing the complaint without prejudice," but "granting Plaintiffs additional time for service would be futile because their Complaint is fatally defective in that it sets forth 'frivolous' claims which cannot be remedied by amendment." 2015 WL 778432, at *12.  Similarly, the Court found "no point" in providing Plaintiffs with additional days to serve the summons and complaint because the Amended Complaint "sets forth exclusively frivolous and/or legally impossible claims."  *Id.*, at *13.

presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Driessen v. Royal Bank Int'l*, No. 3:14-CV-01300, 2015 WL 881205, *1 (D. Conn. Mar. 2, 2015) (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)). Put simply, a "motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Weiming Chen v. Ying-Jeou Ma*, 595 F. App'x 79, 80 (2d Cir. 2015) (citing *Shrader,* 70 F.3d at 257).

The Court has carefully reviewed Plaintiffs' submitted list of assertions in support of their motion for reconsideration. Pursuant to the Second Circuit's strict standard for reconsideration, the Court finds no adequate grounds – no controlling authority or factual information that the Court overlooked – to warrant reconsideration of its Order of Dismissal. Rather, Plaintiffs have once again set forth allegations in an attempt to challenge the validity of the state court foreclosure of the East Windsor Property, upon which Deutsche Bank, as Trustee, foreclosed the mortgage and took title to the property. The requested reconsideration and/or "reargument" (oral argument before the Court) would thus not reasonably be expected to alter the Court's ruling.

The only potentially "new" evidence or data Plaintiffs presented on their motion for reconsideration included: (1) two letters from Howard F. Pitkin ("Pitkin letters"), the Banking Commissioner for the State of Connecticut, regarding a "National Ocwen Settlement" (herein "Settlement") entered between the Consumer Financial Bureau and Ocwen Home Loan Servicing ("Ocwen") with respect to various loans serviced by Homeward Residential Holdings, LLC (previously known as American Home Mortgage Servicing, Inc. or AHMSI); and (2) a photocopy of a check from "Ocwen Borrower Payment Account QSF" payable to Luis Gonzalez for $1,168.44 (dated 12/6/2014). Doc. 15, at 4-7. The Pitkin letters indicate that they relate to a mortgage loan

4

with respect to  "54 Abbe Road, E. Windsor, CT" and inform the "Borrowers" ( recipients) that they "may be eligible to receive a payment of at least $700.00 as a part of the National Ocwen Settlement" because they "had a loan serviced by Homeward Residential Holdings LLC . . . and lost [their] primary residence to foreclosure between January 1, 2009 and December 31, 2012."[5]

In presenting the Pitkin letters and/or the National Settlement payment to Luis Gonzalez, Plaintiffs once again seek to challenge the state court's final judgment of foreclosure.   As stated in the Order of Dismissal, pursuant to the Rooker-Feldman doctrine, this Court remains barred from reconsidering that  foreclosure judgment.  *See, e.g., Swiatkowski v. Bank of America, NT & SA*, 103 F. App'x  431, 432 (2d Cir. 2004) (affirming district court's "holding that under the Rooker-Feldman doctrine, the [district] court lacked subject matter jurisdiction: even reading the complaint liberally, . . . [plaintiffs'] lawsuit was effectively seeking to re-litigate a judgment of foreclosure entered against them by the state court");  *Ford v. U.S. Dep't of Treasury Internal Revenue Serv.*, 50 F. App'x 490, 491 (2d Cir. 2002) (affirming district court's dismissal of plaintiff's complaint for lack of subject matter jurisdiction under the Rooker-Feldman doctrine where plaintiff's claims  asserted alleged

---

[5]        Pursuant to Federal Rule 401 of Evidence, the Court takes judicial notice of the "Consent Judgment" which gave rise to the National Ocwen Settlement payments.  *See Consumer Fin. Protection Bureau v. Ocwen Fin., Corp.*, No. 1:13-cv-2025 (RMC) (D.D.C. Feb. 26, 2014), Doc. 12.  Pursuant to Exhibit B of that judgment, "[t]he purposes of the payments . . . are remedial and relate to the reduction in the proceeds deemed realized by borrowers for tax purposes from the foreclosure sale of residential properties owned by the borrowers allegedly resulting from the allegedly unlawful conduct of Ocwen."    *Id.*, Doc. 12-2, at  ¶  7.    *See also* https://nationalocwensettlement.com (website for National Settlement, declaring that the Consent Judgment addresses Ocwen's alleged "misconduct during the mortgage servicing process.") (visited May 4, 2015).  It thus follows that the letters presented by Plaintiffs do not indicate that foreclosure on the East Windsor Property was wrongful or invalid.  Rather, they address possible errors in mortgage servicing by Ocwen or its subsidiaries.  Either reading of the letters, however, does not alter the Court's finding that any such challenge to the state court foreclosure judgment is barred by the Rooker-Feldman doctrine.

fraud and the statute of limitations with respect to the state court foreclosure judgment; Second Circuit held such claims were "inextricably intertwined with the state court's underlying foreclosure judgment," so that, in "seek[ing] a declaration that the foreclosure judgment [was] void," plaintiff was effectively seeking a "reversal of the state court foreclosure judgment"); *Billie v. Aurigremma*, No. 3:13-cv-1432 (JBA), 2013 WL 6331358, at *2 (D.Conn. Dec. 5, 2013) ("any claims contesting the validity of the state court foreclosure judgment are precluded by the Rooker-Feldman doctrine"); *Andrews v. Citimortgage, Inc.*, No. 14–CV–1534(JS)(AKT), 2015 WL 1509511, at *5 (E.D.N.Y. Mar. 31, 2015) ("in the Second Circuit, any attack on a judgment of foreclosure is . . . barred by the Rooker–Feldman doctrine") (citation omitted) (collecting cases). In addition, the Rooker-Feldman doctrine also bars challenges to the state court foreclosure judgment as "obtained fraudulently." *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014) (*per curiam*).

In the case at bar, Plaintiffs lost in state court regarding foreclosure of their property, complain of injuries caused by that state court judgment, invite federal district court review and rejection of the state court foreclosure, and commenced this federal suit after the state court judgment was rendered. *See, e.g., McKithen v. Brown*, 481 F.3d 89, 97 (2d Cir.2007) (setting forth "four requirements for the application of Rooker-Feldman" doctrine). This Court therefore lacks subject matter jurisdiction over the present action pursuant to the Rooker-Feldman doctrine.[6]

No evidence presented by Plaintiffs for reconsideration contradicts the Court's threshold finding that it lacks subject matter jurisdiction. Absent such jurisdiction, the Court is barred from proceeding in this matter and must dismiss. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines

---

[6] The Court also notes that Plaintiffs have presented no data that the Court overlooked in finding that neither "federal question" nor "diversity of citizenship" subject matter jurisdiction exists in this action. *See* 28 U.S.C. §§ 1331, 1332(a), respectively.

at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").   *See also*

*Manway Constr. Co. v. Housing Auth. of Hartford,* 711 F.2d 501, 503 (2d Cir. 1983) ("It is common

ground that in our federal system of limited jurisdiction any party or the court *sua sponte*, at any

stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction;

and, if it does not, *dismissal is mandatory*.") (emphasis added).

### III.  <u>CONCLUSION</u>

In sum, Plaintiffs have presented no legal authority or new evidence which would reasonably

alter the prior Order of this Court [Doc. 13], which directed dismissal of the action with prejudice.

The Court therefore DENIES Plaintiffs' motion for reconsideration [Doc. 15].

It is SO ORDERED.

Dated: New Haven, Connecticut
       May 6, 2015

 /s/Charles S. Haight, Jr.
CHARLES S. HAIGHT, JR.
Senior United States District Judge
